UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

v.

KEVIN BROWN,

                    Defendant.

**DECISION AND ORDER**
19-CR-186-RJA

        Defendant Kevin Brown appeals (Dkt. Nos. 161, 164) from Magistrate Judge

Roemer's December 28, 2020 order (Dkt. No. 146) denying his third motion for release

from detention pursuant to 18 U.S.C. § 3145(b).[1]  The U.S. Probation Office submitted a

memorandum to the Court, dated February 10, 2021, which copies in the parties and

continues to recommend detention.  The Court has considered all filings made by the

parties in relation to this bail appeal and the underlying bail motion, and the arguments

advanced at the oral argument of Defendant's bail appeal heard on March 3, 2021.

Upon *de novo* review of all the circumstances, and for reasons stated below, the Court

finds pursuant to 18 U.S.C. § 3142(e) that no available conditions of release, or

combinations of conditions, will reasonably assure the safety of the community.  The

Court need not reach the issue of whether there are any available conditions that will

---

[1] Dkt. No. 161 is the redacted version of Defendant's bail appeal, and Dkt. No. 164 is the sealed version.

Defendant makes two separate arguments in connection with his bail motion: (1) a *de novo* bail appeal; and (2) a due process argument, based on the length of Defendant's pretrial incarceration and alleged delays by the Government.  The due process issue has been remanded to Magistrate Judge Roemer for further briefing and development of the record.  *See* Dkt. No. 174 (text order).

reasonably assure Defendant's appearances as required.  Accordingly, the Court affirms the Magistrate Judge's order denying Defendant's motion for bail.

**FACTUAL BACKGROUND**

The Court assumes the parties' familiarity with the facts they have proffered, the procedural history, and the issues on review.  The Court refers to the facts and those proceedings only as is necessary to explain the reasoning that follows.

Defendant has been detained for approximately 18 months since being arrested on August 22, 2019.  *See* Dkt. No. 28, ¶ 28 (Defendant's omnibus motion).    After an initial appearance on the Criminal Complaint on August 29, 2019, Defendant was remanded to the custody of the U.S. Marshal Service.  A detention hearing was held on September 3, 2019 and Defendant was ordered detained.  Magistrate Judge Roemer has denied each of Defendant's subsequent, three motions for bail.

Defendant and his two co-defendants, Reno Sayles, Jr. and Marlon Worthy, are charged in an eight-count Superseding Indictment, dated April 29, 2020.  Defendant  is specifically charged with six of those counts:  (1) felon in possession of a firearm and ammunition, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2) (Count 1); (2) narcotics conspiracy, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B), and 841(b)(1)(C), and 21 U.S.C. § 846 (Count 2); (3) possession with intent to distribute cocaine base, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B), and 18 U.S.C. § 2 (Count 3); (4) possession with intent to distribute fentanyl and acetyl fentanyl, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C), and 18 U.S.C. § 2 (Count 4); (5) possession of firearms in furtherance of drug trafficking, in violation of 18 U.S.C. § 924(c)(1)(A)(i) and 2 (Count

5); and (6) felon in possession of firearms and ammunition, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2) (Count 7).  *See* Dkt. No. 63 (Superseding Indictment).

All the charges other than Count 1 are related to an incident that occurred on August 22, 2019 in Cheektowaga, New York outside Sayles, Jr.'s residence at 50 Wanda Avenue, and involved all three defendants.  In short,[2] law enforcement arrested Defendant after they observed him retrieve a backpack from Worthy's vehicle and head back towards Sayles, Jr.'s vehicle.  The backpack contained, among other things, 2 handguns, 75 bullets, a bullet proof vest, 3 scales containing residue of various controlled substances, and controlled substances.  Officers recovered 33 grams of cocaine base from inside Worthy's vehicle and 7.8 grams from his person.  Another search warrant was executed at 50 Wanda Avenue, where investigators discovered evidence of narcotics trafficking including scales and packaging materials, and documentation in the name of Sayles, Jr.

Count 1, which was not charged in the original Indictment dated September 11, 2019, relates to an incident on February 23, 2018 in Buffalo, New York when a loaded .38 caliber revolver was removed from the center console of the vehicle Defendant was driving, after:  a motor vehicle stop was performed, bags and paraphernalia were tossed out of the vehicle, Defendant attempted to flee, and officers smelled marijuana upon approaching the vehicle.  Officers also recovered two empty Ziploc bags containing a residue amount of marijuana, along with $3,681.  It is undisputed Defendant was charged by State authorities as to the conduct underlying Count 1, but the case was later dismissed.

---

[2] These facts are drawn from the Government's proffer in its opposition to this bail appeal.  *See* Dkt. No. 169, pp. 4-7, for a more detailed iteration of the alleged facts supporting the charges.

## **DISCUSSION**

Defendant states he is willing to submit to any conditions of pretrial release and contends that he should be immediately released on home confinement with electronic monitoring.  He argues that he has sufficiently rebutted the presumption of detention and has presented new circumstances warranting his release on bail.  He specifically objects that Magistrate Judge Roemer did not address evidentiary issues that he argues suggest a lack of evidence against him.  Defendant further argues that the circumstances of the COVID-19 pandemic, as well as family circumstances and his mother's willingness to post a signature bond on his behalf,[3] warrant his release.

Under the Bail Reform Act of 1984, a criminal defendant awaiting trial must be released on bail unless the defendant presents an unreasonable risk of flight or "will endanger the safety of any other person or the community."  18 U.S.C. § 3142(b).  When reviewing a magistrate judge's detention order, the district court performs *de novo* review of that order.  *See United States v. Leon,* 766 F.2d 77, 80 (2d Cir. 1985) (finding that a district court "should not simply defer to the judgment of the [M]agistrate, but [should] reach its own independent conclusion").  When conducting *de novo* review, the district court may rely on the record of the proceedings before the magistrate judge and may also accept additional evidence.  *See e.g. United States v. Colombo*, 777 F.2d 96, 98 (2d Cir. 1985).  The appeal of a magistrate judge's pretrial detention order to this Court is to be "determined promptly."  18 U.S.C. § 3145(b).

---

[3] At oral argument on this bail appeal, the matter was deemed submitted.  One week after oral argument, however, without requesting permission from the Court to supplement his bail appeal papers, Defendant filed for the first time an affidavit from his mother.  She iterates her willingness to be a signatory for Defendant, and states for the first time that in addition to executing a signature bond, she is willing to post $10,000 of cash bail.  Because the Court finds Defendant a danger to the community and does not reach the issue whether he is flight risk, the late-proposed cash security is immaterial to the Court's analysis.

The United States has the burden to show by clear and convincing evidence that the danger posed by the defendant cannot be alleviated by any combination of available bail conditions.  *See United States v. Chimurenga*, 760 F.2d 400, 405 (2d Cir.1985).  It also has the burden to show by a preponderance of the evidence a serious risk of flight for which no conditions will reasonably assure the defendant's appearances in court and as otherwise required.  *Id*.

In determining whether there are conditions of release that will reasonably assure the safety of the community and a defendant's appearances as required, the Court must consider these factors:  "(1) the nature and circumstances of the offense charged, including whether the offense . . . involves . . . a controlled substance; (2) the weight of the evidence against the person; (3) the history and characteristics of the person . . . ; [and] (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release."  18 U.S.C. § 3142(g) (ellipses supplied).

Because of the nature of the charges against Defendant, *see* 18 U.S.C. §§ 3142(e)(3)(A) and (e)(3)(B), and because a grand jury returned an indictment against him, there is a rebuttable presumption "that no condition or combination of conditions will reasonably assure the appearance of the [defendant] as required and the safety of the community."  18 U.S.C. § 3142(e)(3); *see United States v. Contreras*, 776 F.2d 51, 55 (2d Cir. 1985).

When the § 3142(e) rebuttable presumption in favor of detention arises, the United States retains the burden of persuasion if it is seeking detention, and "a defendant must introduce some evidence contrary to the presumed fact[s] to rebut the presumption."  *United States v. Rodriguez*, 950 F. 2d 85, 88 (quotation omitted) (2d Cir.

1991).  "Once a defendant introduces rebuttal evidence, the presumption, rather than disappearing altogether, continues to be weighed along with other factors to be considered when deciding whether to release a defendant."  *Id.* (quotation omitted).  The § 3142(e) presumptions, if unrebutted, are alone sufficient to sustain the United States' burdens of proof on danger and serious risk of flight.  *See id.; see also United States v. Parker*, 65 F. Supp. 3d 358, 364 (W.D.N.Y. 2014).

In this case, the Court finds that Defendant poses a danger to other persons and the community, and that release is not warranted.  Again, the Court need not determine whether Defendant has rebutted the presumption that he is a serious flight risk.

**Nature and Circumstances of the Offense.**

The charges against Defendant are serious.  If Defendant is convicted at trial of the charges in the Superseding Indictment, two of those charges carry mandatory minimum sentences.  On those charges alone, he will face a 10-year mandatory minimum sentence of incarceration (i.e. a 5-year mandatory minimum for conspiracy to distribute 28 grams or more of cocaine base, *see* 21 U.S.C. § 841(b)(1)(B), to run consecutive to a 5-year mandatory minimum for possession of a firearm in furtherance of narcotics trafficking, *see* 18 U.S.C. § 924(c)).

Moreover, the offense conduct is serious, involving the possession of two handguns, ammunition, multiple ammunition magazines, one high capacity magazine, and controlled substances.

This factor weighs against pretrial release of Defendant.

**Weight of the Evidence.**

The parties disagree whether the weight of the evidence is strong against Defendant and whether the evidence has strengthened or weakened as the case has moved forward.

Defendant argues that release is proper because of the following alleged exculpatory evidence:  (1) the lack of forensic evidence tying Defendant to the guns he is alleged to have possessed in the backpack on August 22, 2019 (there is a DNA report attached to Defendant's bail appeal indicating he is excluded as a contributor to the gun, and that the DNA was likely co-defendant Sayles, Jr.'s DNA); (2) Defendant Sayles, Jr.'s affidavit of standing indicating the gun in question belongs to him, which now presents a *Bruton* issue; and (3) Count 1 (relative to firearms possession on February 23, 2018) is based on charges brought in State court that was no-billed by an Erie County Grand Jury, *see* Dkt. No. 99-1 (copy of dismissal).  Defendant states the weight of the evidence has weakened against him, constituting a "change of circumstances" supporting his request for bail.

The Government responds that the weight of the evidence against Defendant is strong, as Defendant exercised "dominion and control" over the firearms and narcotics in the backpack he possessed.  Despite the exclusion of Defendant's DNA on the guns, the Government reasons, at a minimum he aided and abetted Sayles, Jr., and the Superseding Indictment charges that liability under 18 U.S.C. § 2.  The Court notes that although 18 U.S.C. § 2 is listed as to the drug possession charges and not the pertinent firearms possession charge, it is nevertheless hornbook law that an indictment does not have to specifically allege aiding and abetting under 18 U.S.C. § 2.

At oral argument on this appeal, as to the aiding and abetting issue, Defendant argued that it is up to the Government to prove that Defendant knew he was transporting something illegal in the backpack, which not only goes to the weight of the evidence factor but also generally to the conclusion of whether Defendant is a danger to the community and any other person.

The parties disagree whether video footage of Defendant with the backpack hurts or helps Defendant's case.  The Government argues, "[t]he footage is consistent as to what numerous . . . witnesses testified to, namely that the defendant had been in possession of the black backpack."  It argues the footage corroborates law enforcement surveilling the area who observed Defendant grab the backpack out of Worthy's vehicle. Defendant, on the other hand, has argued that from his perspective the footage is favorable to him, as it shows him simply walking down the street while an SUV pulls up and a police officer jumps out and points a gun at him.  Defendant further asserted at oral argument that the video shows him being cooperative with law enforcement in that he does not attempt to flee the scene, and the Government did not disagree.

The video was entered into evidence as Exhibit 18,[4] without objection, at a continued evidentiary/ suppression hearing held on August 14, 2020 before the Magistrate Judge.  (*See* Dkt. No. 108, pp. 118-119).  The Court has reviewed the video footage, which is approximately 10 minutes long.  It is taken from the perspective of the Cheektowaga Police Department vehicle's front dashboard camera, and shows the vehicle drive up to several vehicles parked along what is apparently Wanda Avenue.

---

[4] The pertinent video is one of three videos encompassed within Exhibit 18.  (Dkt. No. 108, p. 120).  On the thumb drive provided by the Government, the relevant video is in the folder labeled "Video_TS_1", and it is the file labeled "VTS_01_1.VOB".  The video is dated August 22, 2019 and time-stamped 15:53:20 through 16:03:17.

An individual (allegedly, Defendant) is seen wearing what appears to be a short-sleeve white tee-shirt and shorts, standing next to the driver's side of a dark SUV (according to the Government, a black Buick).  Defendant is holding a black bag, which he drops to the ground when a second law enforcement vehicle pulls to the curb and an officer steps out to confront him with a gun drawn.  Defendant immediately raises his hands above his head and backs away from the bag, and then gets onto the ground. [5]

Based on the Government's proffer, the video footage shows Defendant in possession of the bag that contained two firearms, narcotics, ammunition, and a bulletproof vest.  He had apparently just retrieved the bag from Worthy's vehicle, a grey Buick sedan, and was delivering the bag to Sayles, Jr., who was sitting in the passenger side of the black Buick, although the video does not show this exchange.  Rather, it shows him initially standing next to the Buick, holding the bag.

As to Sayles, Jr.'s affidavit, the Government counters that based on the Government's proof, Defendant had joint possession of the firearms and narcotics recovered from inside the backpack, and the affidavit does not create "exculpatory evidence" because it cannot be admitted against Sayles, Jr. at trial on the issue of guilt as it was provided in support of a suppression hearing.  From the well-settled case law cited by the Government, [6]  it appears the Government would be precluded from using Sayles, Jr.'s affidavit as a part of its case-in-chief, but it *could* be used for impeachment if Sayles, Jr. elects to testify at trial.

---

[5] This all occurs within the first 40 seconds of the video.  There is no sound to the video.  (*See* Dkt. No. 108, pp. 120-121).

[6] The Government cites *Simmons v. United States*, 390 U.S. 377, 394 (1968), *United States v. Ulbright*, 2014 U.S. Dist. LEXIS 145553, *21 (S.D.N.Y. Oct. 10, 2014), and United States v. *Enix*, 212 F. Supp. 3d 408 (W.D.N.Y. July 25, 2016) in support of this position.

With respect to Count 1, the Government acknowledges the State case against Defendant relative to February 23, 2018 was dismissed against him, but states that DNA analysis on that revolver matched Defendant's DNA profile.  Defendant's suggestion that Count 1 was dismissed because of a "bad search"/ illegal traffic stop is speculative, and irrelevant to the Government's federal case against Defendant.

The Government further argues that since the original Indictment, the case against Defendant has strengthened with additional evidence:  namely, a  search warrant was executed to search Defendant's cell phone, which contained evidence regarding narcotics trafficking; additional laboratory testing confirmed over 28 grams of cocaine base, which triggers a five-year mandatory minimum sentence of incarceration; and the Superseding Indictment added Count 1 against Defendant (the February 23, 2018 firearms possession charge).

Contrary to Defendant's position, the Court does not find the foregoing evidence as exculpatory, when considered with all the Government's proffered evidence.  The DNA evidence may tend to show that Defendant did not handle the guns within the backpack; however, it does not mandate the conclusion that Defendant did not possess the guns or other contents of the backpack he possessed.  The Sayles, Jr. affidavit cannot be used by the Government in its case-in-chief, and even so it does not negate the theory of joint possession, or aiding and abetting Sayles, Jr.  The Government also sets forth additional evidence in support of its charges against Defendant.

The video clearly shows Defendant holding the backpack.  During a post-arrest interview, Defendant denied knowledge that the firearms and drug-trafficking contraband were in the backpack and denied asking anyone what was inside the

10

backpack.  However, evidence of Defendant's drug-trafficking activity, together with the circumstances before his arrest when Defendant, Sayles, Jr., and Worthy all left Sayles, Jr.'s residence together, tend to undermine these exculpatory statements.

Law enforcement were apparently conducting surveillance on Wanda Avenue on August 22, 2019 because of information from a confidential source that Sayles, Jr. possessed a .40 caliber handgun, and he was involved in an April 2019 homicide in Buffalo, New York.  Surveillance units observed Sayles, Jr., Worthy, and Defendant pushing a vehicle down Sayles, Jr.'s driveway that law enforcement suspected was used in a shooting a few weeks earlier.  A tow truck arrived and removed the vehicle, which was then stopped a few blocks away from 50 Wanda Avenue and confirmed to have bullet holes.  Approximately an hour later, surveillance units observed Sayles, Jr., Worthy, and Defendant exit Sayles, Jr.'s residence before the events concerning the backpack, as previously described, occurred.

In addition, Defendant apparently admitted during the post-arrest interview that he previously saw Sayles, Jr. in possession of guns inside of his residence.

Although this factor does not receive as much weight as the other § 3142(g) factors in the overall analysis (*see United States v. Jones*, 566 F. Supp. 2d 288, 292 (S.D.N.Y. July 17, 2008)), it supports Defendant's pre-trial detention.

**History and Characteristics of the Person.**

This factor does not weigh in Defendant's favor, whatsoever.

Defendant has accumulated a substantial criminal record stretching back to 2008/ 2009, when he was 16 years old.  As noted by Magistrate Judge Roemer in the initial detention order dated September 3, 2019, Defendant has at least ten prior arrests,

four misdemeanor convictions (i.e. criminal possession of stolen property in the 5th degree, and three convictions for petit larceny), two felony convictions (i.e. robbery in the 2nd degree – causes physical injury, and grand larceny in the 4th degree), and three prior arrests for firearms.  He also has numerous arrests while released on bail or probation, one prior probation revocation, a prior arrest for criminal impersonation, and three prior bench warrants.  Also noted are Defendant's gambling issues, as well as three previous domestic violence reports and prior orders of protection against Defendant.  It is stated that all the domestic incident reports indicate violence toward the victim.  For example, for one the victim (the mother of Defendant's child) required stiches after an altercation with Defendant, and for another, one charge was for criminal obstruction of breathing or blood circulation—apply pressure (a Class A misdemeanor).  (Dkt. No. 9, p. 3; *see* Defendant's pretrial services report, dated August 30, 2019).

The Government argues Defendant has a U.S.S.G. Criminal History Category IV, and that he will "certainly re-offend while on release."

Defendant's only response to this lengthy criminal history is his attempt to explain why he has so many previous bench warrants; the basis for this argument is speculative.  Even if Defendant's argument was verified (it is not), the bench warrants constitute only a fraction of Defendant's extensive criminal history.

The few factors in Defendant's favor, namely, his positive familial relationships, having attained a level of education (graduated from high school and some attendance at a community college), record of some employment, and lack of current substance abuse (he last drank alcohol in 2014), do not outweigh the numerous other, concerning factors that suggest Defendant should not be released.

**Danger to any Person or the Community.**

Based on Defendant's criminal history and the serious charges against him, this factor weighs against his release.

To briefly reiterate, Defendant's criminal history is rife with convictions, arrests while released on bail or probation, and domestic incident reports indicating violence toward the victim.  In the instant case, Defendant faces a narcotics conspiracy charge, two charges relative to possessing firearm(s) and ammunition, one charge for possessing firearms in furtherance of drug trafficking, and two charges as to possession of controlled substances with intent to distribute.  He faces a lengthy period of incarceration if convicted of these charges, with two 5-year mandatory minimum terms.

The danger that the defendant poses is exactly the sort of danger to the community that prompted Congress to enact the presumption that persons charged with serious drug offenses pose a danger while on pretrial supervision.  *United States v. Leon,* 766 F.2d 77, 81 (2d Cir. 1985) (danger to the community includes "the harm to society caused by [the significant risk of continued] narcotics trafficking").

**COVID-19 Pandemic.**[7]

Defendant also raises the "concerns of the COVID-19 pandemic".  He is housed at Cattaraugus County Jail,[8] where many inmates and staff have been infected with

---

[7] Defendant does not specify which provision the COVID-19 pandemic argument falls under, but it may be 18 U.S.C. §§ 3142(f) (the hearing may be reopened before trial upon a material change in circumstances on the issues of flight risk and danger) or 18 U.S.C. §§ 3142(g)(3)(A) (the Court must consider the defendant's history and characteristics, including his or her physical condition) or 18 U.S.C. §§ 3142(i) (allowing temporary release if "necessary for preparation of the person's defense or for another compelling reason").  The Court's conclusion as to this argument remains the same regardless of which provision Defendant intends to invoke.

[8] It appears he has been housed at Cattaraugus County Jail since his arrest in this case.  *See e.g.* Dkt. No. 28, ¶ 24 (Defendant's omnibus motion); Dkt. No. 137, ¶ 26 (Defendant's third motion for bail).

COVID-19.  He argues that the jail is only quarantining inmates with symptoms, which is ineffective due to asymptomatic transmission.  Defendant is young,[9] and the only physical issue he noted in his pretrial services report was "he suffers from severe headaches but does not take any medication."  In his third motion for bail he acknowledged he is a "young healthy individual."  The Government counters with a list of COVID-19 protocols and preventative measures taken by Cattaraugus County Jail to mitigate risk of infection and address infections when they do arise.

Thus, it does not appear Defendant suffers from any health condition that makes him particularly susceptible to a severe case of COVID-19.  Defendant's argument for release based on the COVID-19 pandemic was previously rejected by Magistrate Judge Roemer in his order denying Defendant's second motion for release.  (Dkt. No. 58). There have now been reported cases of the virus at Cattaraugus County Jail, and there were outbreaks in local jails around the time Defendant's third motion for bail was filed; the situation with COVID-19 has clearly escalated since Magistrate Judge Roemer's text order was issued in April 2020.  Recently, however, the number of positive cases is in the decline and the rollout of the COVID-19 vaccine is underway.  Recognizing the challenges the pandemic poses to prisons and jails, and the surges of COVID-19 that the entire county has dealt with, the Court concludes that the conditions at Cattaraugus County Jail do not alter its conclusion as to Defendant's appeal.

**Weighing the Bail Act Reform Factors.**

The Court must consider whether there are conditions of release that will reasonably assure the safety of the community.  It finds that Defendant failed to

---

[9] He was age 27 as of the date of the pretrial services report, August 30, 2019.

overcome the statutory presumption "that no condition or combination of conditions will reasonably assure . . . the safety of the community."  18 U.S.C. § 3142(e)(3)(C). Because of that determination, the Court need not decide whether any available conditions will reasonably assure the appearance of Defendant as required in Court.

The Court concludes that no available set of conditions will reasonably assure community safety.  On balance, the serious nature of the charges against Defendant and the lengthy period of incarceration he is potentially facing, i.e. a 10-year mandatory minimum sentence of incarceration on just two of the six counts; and the details of Defendant's history and characteristics, especially his lengthy criminal record and problems when he was under court supervision, weigh in favor of pretrial detention. With respect to the other proposed conditions of release, electronic monitoring devices "can be circumvented" and "rendered inoperative."  *United States v. Orena*, 986 F.2d 628, 632 (2d Cir. 1993).  Accordingly, under all the circumstances, the Court finds that Defendant is a danger who must be detained pending trial.

## CONCLUSION

 For the reasons stated above, Defendant Brown's appeal pursuant to 18 U.S.C. § 3145(b) (Dkt. Nos. 161, 164) to revoke Magistrate Judge Roemer's pretrial detention order (Dkt. No. 146) is denied.  The Court finds by a standard of clear and convincing evidence that the electronic monitoring, financial, and other conditions imposed upon Defendant's pretrial release are inadequate to alleviate the danger to the community posed by Defendant.

The Court further orders that Defendant shall remain committed to the custody of the Attorney General for confinement in a corrections facility separate, to the extent

practical, from persons awaiting or serving sentences or being held in custody pending appeal.

The Court further orders that Defendant be afforded reasonable opportunity for private consultation with counsel.

Finally, the Court directs that on order of a Court of the United States or on request of an attorney for the government, the person in charge of the corrections facility in which Defendant is confined shall deliver Defendant to a United States Marshal for the purpose of his appearance in connection with any court proceeding.

This ruling is without prejudice to Defendant's right to the presumption of innocence, and to his right, pursuant to 18 U.S.C. § 3142(f), to seek reconsideration of his pretrial detention based upon changed circumstances.


**IT IS SO ORDERED.**


_s/Richard J. Arcara_
HONORABLE RICHARD J. ARCARA
UNITED STATES DISTRICT COURT


Dated:   March 12, 2021
         Buffalo, New York