UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

v.

MARLON WORTHY and
KEVIN BROWN,

Defendants.

**DECISION AND ORDER**
19-CR-186-RJA

---

Before the Court are the respective motions to sever by defendant Marlon Worthy (Dkt. No. 234) and defendant Kevin Brown (Dkt. No. 236), pursuant to Rule 8 and Rule 14 of the Federal Rules of Criminal Procedure. They seek (1) to sever Count 1 of the Superseding Indictment from the remaining counts they are charged with, and/or (2) to sever defendants. The Government filed a response in opposition to the motions (Dkt. No. 238), and oral argument was heard on September 24, 2021. For the following reasons, Worthy's and Brown's motions for severance of Counts and severance of defendants are both DENIED.

### PROCEDURAL AND FACTUAL BACKGROUND[1]

Defendants, along with their co-defendant Reno Sayles, Jr., are charged in an eight-count Superseding Indictment (Dkt. No. 63), dated April 29, 2020, with: (1) felon in possession of a firearm and ammunition, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2) (Count 1); (2) narcotics conspiracy, in violation of 21 U.S.C. §§ 841(a)(1),

---

[1] The background facts pertinent to the charges in this case are drawn from the Government's proffer in its opposition to defendant Brown's bail appeal, as well as the Government's opposition to the pending severance motions. See Dkt. No. 169, pp. 4-7; see also Dkt. No. 238, pp. 2-5.

841(b)(1)(B), and 841(b)(1)(C), and 21 U.S.C. § 846 (Count 2); (3) possession with intent to distribute cocaine base, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B), and 18 U.S.C. § 2 (Count 3); (4) possession with intent to distribute fentanyl and acetyl fentanyl, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C), and 18 U.S.C. § 2 (Count 4); (5) possession of firearms in furtherance of drug trafficking, in violation of 18 U.S.C. § 924(c)(1)(A)(i) and 2 (Count 5); and (6) felon in possession of firearms and ammunition, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2) (Counts 6, 7, and 8). Brown is charged in Counts 1 through 5, and 7; Sayles, Jr. in Counts 2 through 6; and Worthy in Counts 2 through 5,[2] and 8.

     All charges other than Count 1, *i.e.*, Counts 2 through 8, are related to an incident that occurred on August 22, 2019 in Cheektowaga, New York outside Sayles, Jr.'s residence at 50 Wanda Avenue, and involved all three defendants. On that date, law enforcement officers were conducting surveillance in the area of 50 Wanda Avenue because of information from a confidential source that Sayles, Jr. possessed a .40 caliber handgun, and was involved in an April 2019 homicide in Buffalo, New York.  Surveillance units observed all three defendants pushing a vehicle down Sayles, Jr.'s driveway that law enforcement suspected was used in a shooting a few weeks earlier.  A tow truck arrived and removed the vehicle, which was then stopped a few blocks away from 50 Wanda Avenue and confirmed to have bullet holes.

     Approximately an hour later, surveillance units observed the three defendants exit Sayles, Jr.'s residence and walk to two separate vehicles, with Worthy entering the

---

[2] All three defendants, including defendant Worthy, are charged in Count 5 (possession of firearms in furtherance of drug trafficking).  Thus, the caption on the first page of the Superseding Indictment appears to include a typo, indicating Worthy is charged in only Counts 2 through 4, and 8.  *Compare* Dkt. No. 63, p. 1 *with* Dkt. No. 63, p. 3.

2

driver's side of a gray Buick, and Brown entering the driver's side of a Dodge Durango and Sayles, Jr. entering the passenger side of the Dodge Durango.

The defendants were then arrested after law enforcement observed the two vehicles abruptly pull over to the right side of the road on Wanda Avenue, and saw Brown retrieve a backpack from the gray Buick that Worthy was driving, and head back towards the Dodge Durango he and Sayles, Jr. had been in.  The backpack contained, among other things, 2 loaded handguns (a Glock semi-automatic pistol and a Taurus revolver), 75 bullets, a bullet proof vest, 3 scales containing residue of various controlled substances, and suspected controlled substances (later confirmed to be .57 grams of fentanyl and acetyl fentanyl, and 30 grams of suspected "cut").  Officers recovered approximately 33 grams of cocaine base from inside the gray Buick that Worthy was driving and 7.8 grams from his person.  Sayles, Jr. had less than 1 gram of fentanyl and acetyl fentanyl on his person.  Two vials containing less than 25 grams of marijuana were recovered from the Dodge Durango that Brown and Sayles, Jr. had been in.

Another search warrant was executed at 50 Wanda Avenue, where investigators discovered evidence of narcotics trafficking including scales and packaging materials, and documentation in the name of Sayles, Jr.  According to the Government, the evidence from inside 50 Wanda Avenue has been suppressed and the Government will not seek to admit it at the trial.  *See* Dkt. No. 207, pp. 21-28 (R&R recommending that this evidence be suppressed); Dkt. No. 237 (Decision and Order, adopting the R&R "without modification").

Subsequent laboratory testing confirmed the aforementioned controlled substances, and DNA analysis determined that the major DNA profile from the Glock semi-automatic pistol from the backpack matched Sayles, Jr.'s DNA profile. Sayles, Jr. was excluded from the DNA profile from the Taurus revolver that was found in the backpack, and Brown and Worthy were excluded as contributors to any profiles obtained from the two firearms.

Count 1, which was not charged in the original Indictment dated September 11, 2019, relates to an incident on February 23, 2018 in Buffalo, New York when a loaded .38 caliber revolver was removed from the center console of the vehicle defendant Brown was driving, after: a motor vehicle stop was attempted, Brown's vehicle hit a detective/ sergeant's vehicle and Brown attempted to flee, bags and debris were tossed out of Brown's vehicle, and officers smelled marijuana upon approaching the vehicle. In addition to the revolver, officers also recovered from the scene two empty Ziploc bags containing a residue amount of marijuana, along with $3,681 in U.S. currency. DNA analysis performed on the revolver determined the major DNA profile from the revolver matches Brown's DNA profile.

Currently, the only pretrial motions that remain pending are Worthy's and Brown's respective motions for severance of defendants and counts.

## DISCUSSION

In sum, defendants Worthy and Brown argue that Count 1 of the Superseding Indictment is not related to the other Counts. They also argue that a joint trial involving specific counts or defendants would result in spillover prejudice, would compromise

their trial rights, and would prevent the jury from making a reliable determination as to their guilt or innocence.

I.  **Rule 8 – Joinder of Offenses or Defendants**

Federal Rule of Criminal Procedure 8(a) allows for the joinder of offenses that "[1] are of the same or similar character, or [2] are based on the same act or transaction, or [3] are connected with or constitute parts of a common scheme or plan." "Similar" charges include those that are "somewhat alike", or those "having a general likeness" to each other. *United States v. Rivera*, 546 F.3d 245 (2d Cir. 2008). In sum, offenses may be joined if they have a "sufficient logical connection" to each other or "where the same evidence may be used to prove each count." *United States v. Blakney*, 941 F.2d 114, 116 (2d Cir. 1991). "Rule 8(a) recognizes the adverse effect on the defendant by a joinder of counts but considers this to be outweighed by gains in trial economy when one of the criteria of the rules are met." *United States v. McCabe*, 12-CR-258, 2014 U.S. Dist. LEXIS 21429, *4-5 (W.D.N.Y. Feb. 19, 2014).

Rule 8(b) provides for joinder of defendants "if they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions constituting an offense of offenses." Under the Second Circuit's interpretation of this Rule, "joinder is proper where two or more persons' criminal acts are unified by some substantial identity of facts or participants or arise out of a common scheme or plan." *United States v. Eldridge*, 09-CR-329, 2014 WL 7365929, 2014 U.S. Dist. LEXIS 177309, *8 (W.D.N.Y. Dec. 24, 2014) (internal citations and quotation marks omitted). Unlike Rule 8(a), Rule 8(b) "does not permit joinder of defendants solely on the ground

5

that the offenses charged are of 'the same or similar character'". *United States v. Turoff*, 853 F.2d 1037, 1042 (2d Cir. 1988).

It is well settled that where multiple parties are charged with multiple offenses, joinder must be proper under the "more restrictive" test of Rule 8(b), requiring that "the offenses are . . . part of a series of acts or transactions constituting . . . offenses." *See Turoff*, 853 F.2d at 1042-1043. However, there is an open question in this Circuit whether the Rule 8(a) or Rule 8(b) standard applies "to a defendant in a multi-defendant trial who seeks severance of counts in which he is the only defendant charged." *United States v. Biaggi*, 909 F.2d 662, 676 (2d Cir. 1990) (declining to resolve the issue); *see United States v. Shellef*, 507 F.3d 82, 97 n.12 (2d Cir. 2007) (noting that "the answer to this question is not well-settled" but that the Court "need not opine" on the issue).

Worthy and Brown argue that Count 1 of the Superseding Indictment, which is charged only against Brown, is "factually unrelated" to, or "factually distinct" from, the August 22, 2019 incident involving all three defendants and relative to the remaining counts. Worthy further argues that other than Brown's prior felony conviction, there is "no overlap in proof" with the August 22, 2019 offenses. Worthy and Brown therefore reason that Count 1 is improperly joined under Rule 8 and that it should be severed.

Because Worthy and Brown are moving to sever Count 1, which names a single defendant (Brown), either Rule 8(a) or 8(b) may apply. Again, this issue is unresolved in the Second Circuit.

Under Rule 8(a), the Second Circuit has noted, in upholding a district court's denial of a motion to sever, that "there was a 'sufficient logical connection' between the narcotics counts and the gun count" and that "[t]he gun was an important 'tool' of

[defendant]'s 'trade' -- trafficking in narcotics." *United States v. Page*, 657 F.3d 126, 130 (2d Cir. 2011); *see United States v. Muniz*, 60 F.3d 65, 71 (2d Cir. 1995) ("there are innumerable precedents of this court approving the admission of guns in narcotics cases as tools of the trade") (collecting cases). Based on this precedent, there is a "sufficient logical connection" between the possession of a firearm in Count 1, and the remaining counts of the Superseding Indictment.

The Government also argues that evidence of Brown's possession of a firearm on February 23, 2018, as charged in Count 1, will be evidence admissible under Federal Rule of Evidence 404(b), to prove Defendant's access to firearms, knowledge, intent, and lack of mistake or accident in connection with the Glock semi-automatic pistol and Taurus revolver recovered from the backpack Brown was carrying on August 22, 2019. The Government states this evidence is of import because Brown "has repeatedly professed his lack of knowledge and possession [of] the contents of the bag, and will assuredly be central to his defense at trial", and that "proving Count 1 and Counts 2-7 in separate trials would require presentation of much of the same evidence." According to Worthy, this evidence is inadmissible under Rule 404(b), as it is "blatant propensity evidence." The Court need not rule on this issue today and concludes that it is more appropriately the subject of a *motion in limine*—but does note that the Government appears to aptly infer Brown's likely defense from his pretrial filings.

During oral argument, Brown and Worthy argued that in addition to being factually distinct from the remaining counts, the conduct alleged in Count 1 occurred close to 18 months prior to the conduct alleged in Counts 2 through 8. Brown and Worthy did not make this argument in their motion papers (other than to point out that

7

Count 1 involved an incident that occurred on a different date) and did not cite case law to support this contention. In any event, it appears that such a time difference alone would not sway the Court's conclusion here. *See generally United States v. Griffin*, 811 Fed. Appx. 683, 685 (2d Cir. 2020) (finding no error in joinder under Rule 8(a) where two counts involved "the sale and purchase of the same narcotic, in the same city, *within the same approximately one-year period*") (emphasis added).

As to Rule 8(b), "[u]nder the plain language of Rule 8(b), the decision to join parties turns on what is 'alleged' in the 'indictment.'" *United States v. Rittweger*, 524 F.3d 171, 178 (2d Cir. 2008). "The established rule is that a non-frivolous conspiracy charge is sufficient to support joinder of defendants under Fed.R.Crim.P. 8(b)." *United States v. Nerlinger*, 862 F.2d 967, 973 (2d Cir. 1988).

## II.     Rule 14 – Severance of Offenses or Defendants

"Even if properly joined under Rule 8, Rule 14 vests the court with discretion to sever the defendants' trials or provide any other relief that justice requires, if it finds that joinder appears to prejudice a defendant or the government." *United States v. Gane*, 10-CR-90S, 2010 WL 4962955, 2010 U.S. Dist. LEXIS 124972, *3-4 (W.D.N.Y. Nov. 24, 2010). A severance decision is subject to the trial court's sound discretion. *Id.*

Federal courts have a "preference . . . for joint trials of defendants who are indicted together." *Zafiro v. United States*, 506 U.S. 534, 537 (1993). A number of equitable and practical considerations support this preference. Joint trials "serve the interests of justice by avoiding the scandal and inequity of inconsistent verdicts." *Richardson v. Marsh*, 481 U.S. 200, 210 (1987). Joint trials also "enable more accurate assessment of relative culpability—advantages which sometimes operate to the

defendant's benefit." *Id.* In addition, joint trials promote an efficient use of the Court's resources, as well as the time and resources of the Government and witnesses. And, finally, joint trials prevent gamesmanship, because severing defendants has the effect of "randomly favoring the last-tried defendants who have the advantage of knowing the prosecution's case beforehand." *Id.* In short, "[c]onsiderations of efficiency and consistency militate in favor of trying jointly defendants who were indicted together." *United States v. Spinelli*, 352 F.3d 48, 55 (2d Cir. 2003). Thus, "[j]oint trials are particularly appropriate in circumstances where the defendants are charged with participating in the same criminal conspiracy." *Id.*

These considerations are not absolute, however. Federal Rule of Criminal Procedure 14(a) allows a court to sever trial of multiple defendants where a joint trial "appears to prejudice a defendant." But given the importance of the policies discussed above, severance under Rule 14(a) is available in only limited circumstances: "The Supreme Court has instructed that a district court should grant a Rule 14 severance motion only when 'there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *United States v. Feyrer*, 333 F.3d 110, 114 (2d Cir. 2003), quoting *Zafiro*, 506 U.S. at 539.

Worthy and Brown advance several arguments why severance is proper.

***Prejudicial Spillover.***

Spillover prejudice occurs when "evidence admissible against only one defendant is prejudicial to all defendants and . . . individual trials should have been held to avoid that prejudice." *United States v. DiNome*, 954 F.2d 839, 843 (2d Cir. 1992). There are

circumstances in which severance is required on the basis of spillover prejudice, one relevant factor being "to what extent the evidence presented at the joint trial would have been admitted at a single-defendant trial because of the alleged conspiratorial nature of the illegal activity." *United States v. Villegas*, 899 F.2d 1324, 1347 (2d Cir. 1990). Another factor is "whether the jury was instructed to assess the evidence against each defendant separately from the proof against the other defendants." *Id.*

Worthy argues in the alternative to his misjoinder argument on Count 1 that he otherwise "faces significant prejudice" and that Count 1 should be severed under Rule 14. He reasons that should the jury hear testimony about Brown's involvement in an unrelated firearms possession offense, it will be led to improperly conclude that Worthy is guilty of the firearms possession offenses alleged against Worthy in Counts 5 and 8, despite the exclusion of Worthy's DNA from the pistol and revolver in those Counts. He further reasons that the narcotics conspiracy alleged against all defendants in Count 2 likewise invites speculation that Brown possessed the firearms during the August 22, 2019 incident, if he possessed a firearm in another incident.

There are circumstances when a single defendant may seek a severance of counts on the ground that the evidence as to one count would be unfairly prejudicial as to another count, which most typically would occur with respect to status-based offenses such as the felon in possession charge in Count 1. However, the Second Circuit in *Page* rejected the defendant's argument "that a felon-in-possession charge must always be severed from other charges." *Page*, 657 F.3d at 132. The Court held, instead, that the district court had not abused its discretion in denying such a severance

10

motion where "the trial court [took] steps to limit the danger of prejudice and [gave] a proper limiting instruction."  *Id.*

Worthy also argues that he should be severed from the trial because there is a "substantial chance" of "spillover prejudice" from evidence admissible against Sayles, Jr.  That evidence concerns what brought law enforcement to Wanda Avenue in the first instance, namely, Sayles, Jr.'s possession of a firearm, possibly connected with a homicide.

Brown is also concerned about the background of what brought law enforcement to Wanda Avenue on August 22, 2019, information that "has nothing in common" with any allegations against Brown, which will purportedly make it impossible for the jury to arrive at a fair and impartial verdict as to him.  Brown also argues that evidence and statements as to drugs found on Worthy's person, and Counts 2, 3, 4, and 5 (narcotics charges) would prejudice him as there is no evidence that Brown "had any connection with these drugs or any knowledge of them."

At oral argument on the severance motions, the Government stated that it is not expecting to present proof at trial of law enforcement targeting Sayles, Jr. for a homicide.  Nevertheless, courts have regularly held that "[t]he mere fact that Defendant is not charged with some of the crimes with which his co-defendants are charged does not justify severance", even when those charges include, for example, "more serious crimes of murder and murder conspiracy."  *United States v. Liburd*, 17-cr-296 (PKC), 2019 WL 319392, 2019 U.S. Dist. LEXIS 11850, *18-19 (E.D.N.Y. Jan 24, 2019).  While Sayles, Jr.'s alleged involvement in a murder is an *uncharged* crime, the Court finds that the same principle applies.

The likelihood of spillover prejudice is also reduced where the evidence against each defendant is "straightforward" and unlikely to confuse the jury.  *See United States v. Hernandez*, 85 F.3d 1023, 1029 (2d Cir. 1996).  The Court finds that in the instant case, "[t]he indictment does not reveal a particularly high level of complexity such that jurors are likely to become confused in attempting to sort and analyze the evidence." *United States v. Prosano*, No. 3:20-cr-00086 (KAD), 2020 WL 5441344, 2020 U.S. Dist. LEXIS 164967, *16 (D. Conn. Sept. 10, 2020).

It is also alleged that defendants are prejudiced because the evidence against Sayles, Jr. is stronger than the evidence against Brown and Worthy.  The Second Circuit has routinely rejected such arguments.  *See United States v. Locascio*, 6 F.3d 924, 947 (2d Cir. 1993) ("joint trials involving defendants who are only marginally involved alongside those heavily involved are constitutionally permissible."); *United States v. Carson*, 702 F.2d 351, 366-367 (2d Cir. 1983) ("differing levels of culpability and proof are inevitable in any multi-defendant trial and, standing alone, are insufficient grounds for separate trials").

As alluded to above, even if prejudice were to arise at trial, the Court finds that a limiting instruction would be appropriate to cure any possible prejudice.  *See Eldridge*, 2014 U.S. Dist. LEXIS 177309, *15-16 ("There appears to be no reason why the jury will not be able to weigh the evidence separately as to each defendant on each charge and render a fair and impartial verdict.  Indeed, the parties will have the ability to propose limiting instructions during the trial and to submit proposed jury charges to the court, and defendants may suggest instructions to limit any spillover prejudice presented by a joint trial.").

Last, Worthy raised during oral argument that he is out-of-custody and defense counsel for Worthy will not have time in his calendar to try the case until early 2022, in contrast with his co-defendants who are both in pretrial detention and have raised speedy trial issues. This ground has been found "insufficient" to justify granting a severance motion, however, as "cases involving multiple defendants are governed by a single speedy trial clock . . ., and speedy trial concerns do not present a standalone basis for the severance of an individual defendant's trial." *Liburd*, 2019 U.S. Dist. LEXIS 11850, *23 (internal quotation marks and citations omitted).

***Co-Defendants' Exculpatory Testimony.***

"A defendant might suffer prejudice if essential exculpatory evidence that would be available to a defendant tried alone were unavailable in a joint trial." *Zafiro*, 506 U.S. at 539. Worthy seeks severance from the trial based on defense counsel's claim that pursuant to a "joint defendant agreement", he "has reason to believe one (or more) of the co-defendants would attest that [Worthy] had no reason to know what, if any, contraband would have been in the bag recovered on Wanda Avenue." Worthy reasons that in a joint trial, he could not call either co-defendant as a witness as they would likely exercise their Fifth Amendment right against self-incrimination in that trial, but that in a separate trial, the co-defendants would offer exculpatory testimony.

In *United States v. Finkelstein*, 526 F.2d 517, 523-524 (2d Cir. 1975), the Court identified four factors that courts should consider in evaluating such a claim: "(1) the sufficiency of the showing that the co-defendant would testify at a severed trial and waive his Fifth Amendment privilege . . . ; (2) the degree to which the exculpatory testimony would be cumulative . . . ; (3) the counter arguments of judicial economy . . . ;

13

and (4) the likelihood that the testimony would be subject to substantial, damaging impeachment."

On the first factor, "[i]mportantly, declarations of an intent to testify at a separate trial without demonstrating an intent to plead guilty or waive a Fifth Amendment right have been held to be insufficient showing for the first factor." *United States v. McCabe*, 12-CR-258, 2014 U.S. Dist. LEXIS 21429, *18 (W.D.N.Y. Feb. 19, 2014), citing *United States v. Levy*, 2013 U.S. Dist. LEXIS 30223, 2013 WL 787913, at *1 (S.D.N.Y. 2013) and *Gorin v. United States*, 313 F.2d 641, 646 (1st Cir. 1963) ("[I]t is unrealistic to think that a co-defendant would be any more willing to waive his constitutional privilege against self-incrimination when called as a witness at a separate trial than he would be willing to insist upon his privilege as a defendant not to take the stand.").

The Court does not even have such declarations here. Worthy's argument is completely speculative, and he fails to provide any affidavit from Brown or Sayles, Jr. supporting his claim that they are willing to testify or what their testimony would be. Indeed, the affidavit of Worthy's attorney "neither describes the nature of [co-defendants'] testimony nor offers a plausible explanation of why they would testify only at a separate trial. Self-serving, conclusory statements that exculpatory witnesses will not testify at a joint trial are not adequate to compel severance." *United States v. Bari*, 750 F.2d 1169, 1177 (2d Cir. 1984). All the attorney affidavit describes is the vague assertion that co-defendants are aware that Worthy did not know what contraband, if any, was in the backpack.

Thus, the Court concludes, as the Court did in *Gane*, that "[i]t is therefore impossible for this Court to determine whether the testimony that [defendant] anticipates

14

would be exculpatory, cumulative, or subject to damaging impeachment.  With this incomplete showing, [defendant] has failed to demonstrate any prejudice stemming from a joint trial and has failed to overcome the federal preference that defendants who are indicted together, particularly in a criminal conspiracy, be tried together." *Gane*, 2010 U.S. Dist. LEXIS 124972, at *8.  As such, the Court need not go through the analysis of the remaining *Finkelstein* factors.

## CONCLUSION

For the foregoing reasons, the motions to sever filed by defendant Worthy (Dkt. No. 234) and defendant Brown (Dkt. No. 236) are DENIED in their entirety.

**IT IS SO ORDERED.**

      *s/Richard J. Arcara*
HONORABLE RICHARD J. ARCARA
UNITED STATES DISTRICT COURT

Dated:   November 16, 2021
      Buffalo, New York